VEENSTRA *v.* DEGOLIA.

PARTNERSHIP—ACCOUNTING—EVIDENCE—SUFFICIENCY.
   In a suit for a partnership accounting, the decree of the
     court below in favor of plaintiff, *held*, justified by the
     record.

Appeal from superior court of Grand Rapids; Dunham (Major L.), J.   Submitted October 15, 1919. (Docket No. 52.)   Decided December 23, 1919.

Bill by Jelle Veenstra against William E. DeGolia to restrain an action at law and for an accounting. Defendant filed a cross-bill for an accounting. From a decree for plaintiff, defendant appeals. Affirmed.

*Smedley & Linsey,* for plaintiff.

*Hartley E. Hendricks* and *John M. Dunham,* for defendant.

STONE, J.   Bill for an accounting and for an injunction.   The plaintiff, the defendant, and one H. J. DeGolia, entered into a copartnership, for the purpose of conducting a general real estate business in the city of Grand Rapids and vicinity.   This partnership continued from about May 16, 1917, to December 1. 1917. On May 10, 1918, defendant had plaintiff arrested on a writ of *capias ad respondendum.*   On May 24, 1918, the writ was dismissed by the circuit court.   On the same day defendant caused to be issued out of said court a second writ of *capias,* wherein it was claimed that this complainant was indebted to this defendant by reason of certain fraudulent acts, growing out of certain of their partnership transactions.   Thereupon, plaintiff filed this bill of complaint in the superior. court of Grand Rapids, in chancery, asking for an ac-

counting of certain partnership dealings, and for a decree for whatever sum was found to be due him upon such accounting. He offered to pay defendant any sum that the court found due and payable to him upon such accounting. Plaintiff further asked that defendant be enjoined from prosecuting the *capias* case in the circuit court. Defendant filed his answer in the nature of a cross-bill, and asked that the court decree that plaintiff was indebted to him upon certain partnership transactions. The case was heard upon pleadings and proofs taken in open court. The testimony, consisting of about 100 pages of the record, involves various and complicated dealings of the parties, and a reading of it satisfies us that an extended discussion of it would serve no good purpose, as questions of fact only are involved.

The learned trial judge, who heard the case, filed a written opinion which clearly and concisely states the facts found, sufficient for an understanding of the questions involved, together with his conclusions thereon. We find ourselves so fully in accord with his findings and conclusions that we adopt the same. It is as follows:

"FINDINGS OF FACT.

"The parties to this suit, together with one H. J. DeGolia, were copartners from about the 16th day of May, 1917, to the first day of December, 1917, as general real estate dealers, and that they were to share and share alike in the profits and expenses as such copartners. That neither William E. DeGolia or H. J. DeGolia paid any office rent during that period, the whole of it being paid by plaintiff at the rate of $15 per month, excepting during the time that one Kinney had desk room therein, and during which time he paid five dollars ($5) per month therefor. Plaintiff paid the telephone rental of eleven dollars and fifty cents ($11.50) less about two dollars and eighty-seven cents ($2.87), paid by said Kinney, and the expenses of running said real estate office during the time of said

copartnership was five hundred and seventy-six dollars and forty-one cents ($576.41) all of which was paid by the plaintiff with the exception of twenty-five dollars ($25), that is to say, that plaintiff paid of such expenses five hundred and fifty-one dollars and forty-one cents ($551.41). Defendant here is chargeable with one-third thereof and interest amounting to one hundred ninety-four dollars and fifty-five cents ($194.55).

"I find the defendant here, William E. DeGolia, is indebted to plaintiff for borrowed money, the sum of four hundred and ten dollars and two cents ($410.02). This amount includes seventy-five dollars ($75) borrowed from the Kent State Bank. The two notes given to said bank for that amount, one for the loan and one in renewal thereof, I find was borrowed for and paid to the defendant by plaintiff. I come to this conclusion from the fact that from almost the very beginning of said copartnership, defendant was continually borrowing money of plaintiff, borrowing one hundred dollars ($100) on May 4th, 1917; eighteen days thereafter, he borrowed another one hundred dollars ($100) of plaintiff; on August 21st, he borrowed another one hundred dollars ($100), and I have no question but what he borrowed the seventy-five ($75) of the bank on August 8th, 1917, as plaintiff claims, and that to get it, it was necessary for plaintiff to give the note as he did. I am led to this conclusion of the continual borrowing of defendant from plaintiff and from the fact that the first or canceled note upon this trial was found to be in the possession of the defendant.

"The automobile that was used in this copartnership business was bought and paid for by the plaintiff; neither the defendant nor the other copartner, H. J. DeGolia, ever paid any part of said purchase price. Neither do I find that by any exchange of equity in any real estate by the two DeGolias to the plaintiff for an interest in said automobile, as claimed by them, is true. The automobile is now the property of the plaintiff, as it always has been.

"Defendant collected three hundred and thirty-four dollars ($334) from Roy J. Bennett at an expense of twelve dollars ($12), one-third of this amount and

interest amounting to one hundred and fourteen dollars and eight cents ($114.08) is the amount thereof that defendant owes the plaintiff.

"On the Allendale farm deal, so-called, plaintiff paid to the Coopersville bank the sum of one thousand and eighty-nine dollars and forty-six cents ($1,089.46). Plaintiff received from one Klant in exchange for the Coit estate property, five hundred dollars ($500). Defendant put no money into this proposition; plaintiff acquired the title to the Coit estate property; there is a mortgage thereon of eleven hundred dollars ($1,-100) and it cost plaintiff fifty-seven dollars ($57) in paying back payments and commissions on said loan.

"Plaintiff claims that this property is worth not to exceed eighteen hundred dollars ($1,800), and in open court offered to have it deeded to the defendant for eighteen hundred dollars ($1,800) now or at any time within six months; plaintiff claims that the equity in this property is seven hundred dollars ($700) or the difference between eighteen hundred dollars and eleven hundred dollars, or seven hundred dollars, but in order to acquire this title and that loan, it cost plaintiff fifty-seven dollars ($57). There is no question but what this property belongs to the parties to this suit, although the title is in the plaintiff's daughter. At the time plaintiff made this deal, he was a copartner of the defendant, and was defendant's agent in respect to any copartnership property or matters. Deducting the fifty-seven dollars from the seven hundred dollars ($700), leaves a balance of six hundred and forty-three dollars ($643) in said property belonging to the parties to this suit.

"The plaintiff in his transactions with the Coopersville bank, concerning the Allendale farm, put into that property five hundred and eighty-nine dollars and forty-six cents ($589.46) over and above the five hundred ($500) that he received from said Klant; one-half of this five hundred and eighty-nine dollars and forty-six cents ($589.46) is chargeable against defendant, while defendant is entitled to one-half of six hundred and forty-three dollars ($643) which plaintiff owes defendant, being three hundred and twenty-one dollars and fifty cents ($321.50), while defendant owes plaintiff one-half of five hundred and eighty-nine dol-

lars and forty-six cents ($589.46), which amount is two hundred and ninety-four dollars and seventy-three cents ($294.73), and the difference between these two amounts is fifty-three ($53) dollars, one-half of which belongs to the defendant, amounting to twenty-six dollars and seventy-seven cents ($26.77), which plaintiff should be charged with. Plaintiff also received rent from the Allendale farm while it was in his charge of one hundred and forty dollars ($140); one-half of this belongs to the defendant, or seventy dollars ($70).

"Plaintiff also received twenty-five ($25) commission on a team of horses; one-third of this belongs to the defendant, which is eight dollars and thirty-three cents ($8.33). Eight dollars and thirty-three cents ($8.33) plus seventy dollars is seventy-eight dollars and thirty-three cents ($78.33) and interest thereon which is four dollars and sixty-six cents ($4.66), makes a total of eighty-two dollars and ninety-nine cents ($82.99), and is chargeable against plaintiff.

"With reference to the Bridge street rooming house, plaintiff paid thirty-seven dollars and fifty cents ($37.-50) in relation thereto. Its value is three hundred and fifty dollars ($350); deducting $37.50 from this $350, leaves three hundred and twelve dollars and fifty cents ($312.50), one-third of which belongs to the defendant, and amounts to one hundred and four dollars and twelve cents ($104.12) with interest thereon, amounting to six dollars and seven cents ($6.07) or a total of one hundred and ten dollars and nineteen cents ($110.19)."

"Whatever equity these copartners had in the North street property was lost to all of them in the farm transaction into which the equity in that property was traded, plaintiff losing as much as either of the other of his copartners.

"Defendant has no interest in lot eighty (80) block seventeen (17) of Sobvinski's addition. Defendant claims a one-third interest in lot four (4) of Sunny Side addition to the city of Grand Rapids. I think no one without years of experience in dealing in equities in real estate would make a claim to any interest in this lot. The title to it is in plaintiff. He made the loan to the woman by which he acquired this property, and the transaction was so unconscionable that

I should expect the plaintiff, if an honest man, not to desire to hold the title himself thereto, but the plaintiff has the title, and if in the transaction the title had gone to defendant, no court would aid the plaintiff in obtaining any interest therein. The title is in the plaintiff and so far as this court is concerned, will remain there, and the defendant should receive nothing by reason thereof, and I hold the defendant has no interest therein.

"The title to lot seventy-seven (77) of Coit Park addition is now in Jessie Vogel. Such conveyance being upon an arrangement and agreement between herself and the plaintiff here, her father. The equity in this property over and above the $1,100 mortgage belonged to the parties to this suit as copartners, and one copartner, the plaintiff, having conveyed or had it conveyed to his daughter, Jessie Vogel, and the value of such equity having been determined in this case and defendant having been upon the accounting therein given credit for, the title thereto should be quieted in said Jessie Vogel.

"I do not feel that there is a preponderance of the evidence on the part of the plaintiff as to the small loans he testified to, amounting to ninety-two dollars forty cents ($92.40), and I find that he has not established that claim against the defendant by a preponderance of the evidence.

"Defendant DeGolia is indebted under the evidence in this case to the plaintiff in the sum of one hundred and ninety-four dollars and fifty-five cents ($194.55) for rent; in the sum of four hundred and ten dollars and two cents ($410.02) for borrowed money; that defendant owes the plaintiff the sum of one hundred and fourteen dollars and eight cents ($114.08) on account of money received by him from Roy J. Bennett, or a total of seven hundred and eighteen dollars and sixty-five cents ($718.65).

"Plaintiff owes defendant, as shown by the testimony in this case, the following sums: Upon the Allendale farm deal, and the transactions with Mr. and Mrs. Klant, the sum of twenty-six dollars and seventy-seven cents ($26.77) ; for rent from the Allendale farm and the commission on a team of horses and interest thereon, eighty-two dollars and ninety-nine

cents ($82.99); and on the Bridge street rooming house property one hundred and ten dollars and nineteen cents ($110.19), or a total of two hundred and nineteen dollars and ninety-five cents ($219.95).

"Under this transaction, plaintiff is entitled to a decree against the defendant for the difference between seven hundred and eighteen dollars and sixty-five cents and two hundred and nineteen dollars and ninety-five cents, or four hundred and ninety-eight dollars and seventy cents ($498.70) with costs to be taxed. Plaintiff has some security for some of the money loaned by him to the defendant; this security will stand until the amounts so secured have been paid.

"The preliminary injunctions issued herein against defendant from prosecuting the case or cases commenced by him against plaintiff in the Kent county circuit court, will, by decree granted herein, be made perpetual. A decree may be prepared in conformity with this opinion."

A decree was entered accordingly, which is affirmed, with costs to plaintiff.

BIRD, C. J., and SHARPE, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.